## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CRAIG WHITLOCK,

                 Plaintiff,

      v.

U.S. DEPARTMENT OF DEFENSE, *et al.*,

            Defendants.

Case No. 20-cv-3246 (JMC)

## MEMORANDUM OPINION

Plaintiff Craig Whitlock, a reporter for *The Washington Post*, made thirteen Freedom of Information Act (FOIA) requests for records related to a federal corruption and bribery investigation. ECF 20-1 at 6.[1] Defendants—the U.S. Department of Defense and the U.S. Department of the Navy—withheld many of the responsive records pursuant to FOIA Exemptions 5, 6, 7(A), 7(B), and 7(C). *Id.* The parties cross-move for summary judgment. ECF 20; ECF 23. The sole disputed issue is whether the agency properly withheld responsive records pursuant to Exemptions 7(A) and 7(B). *See* ECF 23-1 at 1 n.1. Because the agency has not justified its Exemption 7(A) and 7(B) withholdings but has demonstrated that it is entitled to summary judgment on the remaining (undisputed) issues, the Court will **GRANT** Whitlock's cross-motion for summary judgment and **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I.    BACKGROUND

The following facts are not in dispute. Beginning in the early 1990s, Glenn Defense Marine Asia (GDMA) served as the husbanding agency for the U.S. Navy, providing logistical support to military vessels throughout Asia. ECF 20-3 at 3 ¶ 4. At one point, GDMA held government contracts worth more than $196 million. *Id.* In 2013, a federal investigation (the "GDMA investigation") revealed that the company's owner, Leonard Francis, had paid millions of dollars in bribes and gifts to Navy service members and employees in exchange for confidential information. *Id.* at 3 ¶ 5.

Francis pled guilty to fraud and bribery charges in 2015. *Id.* at 8 ¶ 7. Federal prosecutors have since charged more than 30 individuals in connection with the GDMA investigation. *Id.* at 8–9 ¶ 7. At the time of summary judgment briefing, eight former naval officers were awaiting trial in *USA v. Newland, et al.*, No. 3:17-CR-623 (S.D. Cal.). *See id.* The court planned to conduct Francis's sentencing after the conclusion of that trial. *Id.* The U.S. Attorney's Office for the Southern District of California had also referred nearly 700 individuals to military adjudication authorities. *Id.* at 9 ¶ 9. The Navy's Consolidated Disposition Authority (CDA) is responsible for reviewing those referrals and formulating disciplinary recommendations. *Id.* The CDA "will not conclude its work until such time as the Department of Justice determines that it will not refer additional individuals to Navy for final disposition and closes the GDMA criminal investigation." *Id.* at 10 ¶ 12.

Whitlock is an investigative reporter for *The Washington Post* who covers national security issues, including the GDMA investigation. ECF 1 ¶¶ 2, 16. He filed a number of FOIA requests seeking Navy records related to the GDMA investigation; thirteen of those requests are at issue in this case. *See* ECF 20-2; ECF 23-4. The Navy searched for and identified roughly 18,000 pages of

records responsive to Whitlock's requests. *See* ECF 20-2 ¶¶ 4, 9, 14, 19, 24, 29, 34, 43, 48, 53, 58,

63. It withheld around 1,500 pages of those records in part and approximately 16,500 pages in full,

invoking FOIA Exemptions 5, 6, 7(A), 7(B), and 7(C). *Id.* ¶¶ 5, 10, 15, 20, 25, 30, 35, 39, 44, 49,

54, 59, 64. Whitlock appealed each of the Navy's adverse decisions, and the Navy denied those

appeals. *See* ECF 20-3 at 11–24 ¶¶ 17–145.

    Whitlock filed this suit, claiming that the agency had violated the Freedom of Information

Act, 5 U.S.C. § 552. ECF 1. Defendants moved for summary judgment, arguing that the agency

complied with the FOIA by performing adequate searches for responsive records and appropriately

withholding documents pursuant to Exemptions 5, 6, 7(A), 7(B), and 7(C). *See* ECF 20. Whitlock

cross-moved for summary judgment, challenging only the Navy's[2] Exemption 7(A) and 7(B)

withholdings. *See* ECF 23-1. He does not contest whether the Navy conducted adequate searches,

or whether it appropriately withheld records under Exemptions 5, 6, and 7(C). *See id.* at 1 n.1. The

parties' motions are fully briefed and the Court is prepared to rule. *See* ECF Nos. 20, 23, 24, 26,

27, 28.

## II.    LEGAL STANDARD

    "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v.*

*Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court will grant a motion for

summary judgment when "the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material

fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he

evidence is to be viewed in the light most favorable to the nonmoving party and the court must

---

[2] For ease of reference, the Court refers—as do the parties—to both Defendants as "the Navy."

draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To satisfy that burden, the "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980). A court may rely on the agency's "relatively detailed and non-conclusory" affidavits or declarations to resolve a FOIA case, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.    ANALYSIS

Whitlock does not dispute that the Navy's searches were adequate or that it properly withheld records pursuant to Exemptions 5, 6, and 7(C). *See* ECF 23-1 at 1 n.1; ECF 26 at 1. The Court must nonetheless independently evaluate whether the agency is entitled to summary judgment. *See Alexander v. FBI*, 691 F. Supp. 2d 182, 193 (D.D.C. 2010), *aff'd*, 456 F. App'x 1 (D.C. Cir. 2011). Because the Navy has met its burden, the Court enters summary judgment for the government as to those issues.

Whitlock challenges the Navy's decision to withhold records pursuant to two FOIA exemptions: 7(A) and 7(B). *See* ECF 23. Because the Navy has failed to justify those withholdings, the Court will grant Whitlock's cross-motion for summary judgment and order the Navy to produce records that it withheld pursuant only to those exemptions.

### A. Uncontested Issues

The Navy moves for summary judgment, arguing that its searches were adequate, and that it properly withheld records pursuant to FOIA exemptions 5, 6, and 7(C). *See* ECF 23. Whitlock does not dispute these claims. *See* ECF 23; ECF 26 at 1. The burden nonetheless remains on the Navy to demonstrate that summary judgment is warranted, and the Court must "determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)); *but see Dutton v. DOJ*, 302 F. Supp. 3d 109, 126 n.6 (D.D.C. 2018) (concluding, in FOIA case where plaintiffs objected to only some of defendant's withholdings, that "[s]ince plaintiffs have not presented facts that would give rise to a genuine dispute of material fact concerning the invocation of Exemptions 1, 3, 5, 7(A), and 7(D), there is no dispute for the Court to adjudicate, and the requirements of Rule 56 have been satisfied."). The Court assesses each of the Navy's arguments in turn and concludes that summary judgment is appropriate.

### 1. Search adequacy

Under the FOIA, agencies have "an obligation . . . to conduct an adequate search for responsive records." *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016). A search is adequate if it is "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). To prove its search was adequate, the

agency may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Such affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc.*, 926 F.2d at 1200.

The Navy has submitted a declaration from Lieutenant Commander Ann Oakes, an attorney for the U.S. Navy Office of the Judge Advocate General. ECF 20-3 (Oakes Declaration). The Oakes Declaration explains that "[r]ecords of the GDMA investigation and any disposition of alleged misconduct are maintained in four locations," and that after receipt of each of Whitlock's requests, the Navy identified which of those four locations housed responsive records and retrieved any records for review. *Id.* at 11–24 ¶¶ 16, 21, 31–32, 40–41, 52–53, 57, 66, 75, 84, 101, 110, 124, 135, 140. Whitlock does not dispute these facts. *See generally* ECF 23. The Court therefore finds that the Oakes Declaration provides a "reasonably detailed" description of the agency's searches, *Oglesby*, 920 F.2d at 68, and that those searches were "reasonably calculated" to find the records Whitlock sought, *Valencia-Lucena*, 180 F.3d at 325. The Navy is entitled to summary judgment on the question of search adequacy.

### 2. *Exemption 5*

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant," including attorney-client, work product, and deliberative process privileges. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). To

establish that it properly withheld a record under Exemption 5, an agency must show that (1) at least one of those privileges applies to the materials in question, and (2) "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021).

Here, the Navy relies on the deliberative process privilege. A document is protected by the deliberative process privilege if it is both "predecisional and deliberative." *Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). A document is predecisional if it is "generated before the adoption of an agency policy," and deliberative if it "reflect[s] the give-and-take of the consultative process" leading up to that decision. *Id.* Exemption 5 therefore "shelters documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

The Navy argues that the following documents are subject to the deliberative process privilege and are protected by Exemption 5:

- Emails containing discussions between Naval Criminal Investigative Service (NCIS) counsel, the Navy Office of the General Counsel (OGC), and the CDA regarding whether certain individuals should be allowed access to sensitive information (collectively, "vetting records"), responsive to FOIA DON-NAVY-2018-005865. ECF 20-3 at 33.
- CDA recommendations as to disposition of alleged misconduct, draft dispositions, and references to said drafts, as well as the CDA's recommendation with respect to disposition of misconduct in the case of Heedong Choi[3] (collectively, "disposition records"), responsive to FOIA DON-NAVY-2019-008474. *Id.* at 40.

---

[3] Heedong Choi is a U.S. Navy Captain who accepted improper gifts from and conspired with Leonard Francis. ECF 20-3 at 8 ¶ 6(j).

- Deliberation notes of Board of Inquiry[4] members ("BOI notes"), responsive to FOIA DON-NAVY-2019-005803. *Id.* at 38.

ECF 20-1 at 14–15. These documents are predecisional because they were created antecedent to the Navy's decisions to grant or deny certain individuals access to GDMA investigation records (vetting records) or to take disciplinary action against certain individuals (disposition records and BOI notes). *See* ECF 20-3 at 25–26 ¶¶ 149–52. The documents are also deliberative because they represent discussions between agency employees (vetting records), *see* ECF 20-3 at 33; CDA recommendations that may or may not have been adopted (disposition records), *see id.* at 40; and information recorded by members of the Board of Inquiry as they deliberated (BOI notes), *id.* at 38.

The Oakes Declaration demonstrates that "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 361. Disclosing vetting records "would impair open, frank discussions between NCIS, OGC and the CDA on whether an individual would be granted access to the GDMA investigation." ECF 20-3 at 25 ¶ 150. It is important that "the individuals making the vetting decisions . . . know that their internal discussions would not be publicly disclosed, especially because the individuals being vetted included Navy flag officers, senior officials and members of their professional community." *Id.* Similarly, disclosing disposition recommendations "would impair open, frank discussions on matters of policy between subordinates and superiors." *Id.* at 25 ¶ 151. The disciplinary process relies on subordinates' ability "to present a range of options for the decision-making process, and if they are discouraged from doing so due to the potential of unwanted publicity, frank discussion as to appropriate discipline will be limited." *Id.*

---

[4] Boards of inquiry "receive evidence and make findings and recommendations as to whether an officer . . . should be retained on active duty." 10 U.S.C. § 1182(a).

And finally, disclosing the BOI notes "would discourage note-taking to memorialize evidence presented or analyze information." *Id.* at 26 ¶ 152. If BOI members feared their handwritten notes would be published, "they would be inclined only to record notes that would be palatable to the public, rather than notes that support their memory or thought process." *Id.*

Because the Navy has demonstrated that these records are predecisional and deliberative, and that their disclosure would harm the interest protected by the deliberative process privilege, the Navy properly withheld these records under Exemption 5 and is entitled to summary judgment on that issue.

### 3. *Exemption 7(C)*

The Navy withheld a number of documents either in whole or in part pursuant to Exemption 7(C), or pursuant to both Exemptions 6 and 7(C). Both exemptions "seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 provides that an agency need not produce "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes," to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). As the Court explains below, there is no dispute that the information here was "compiled for law enforcement purposes." *Id.* "Because Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6, [the Court] confine[s] its analysis to Exemption 7(C)" where the Navy invokes both exemptions. *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (*PETA*).

The Navy withheld, pursuant to Exemption 7(C), "the identity and contact information of (1) individuals below the rank of O6 or GS-15, who NCIS vetted for access to the GDMA investigation or who served as board members or were involved with the administrative BOI proceedings; and (2) subjects below the rank of O6 referred to a BOI, who the Navy retained in naval service."[5] ECF 20-1 at 25; *see* ECF 20-3 at 30 ¶¶ 174–76. Whitlock does not dispute that, as a factual matter, these records were "compiled for law enforcement purposes": investigating criminal offenses and preparing for "potential . . . civil or criminal sanction by the Navy." ECF 20-1 at 20–21; *see* ECF 20-3 at 27–28 ¶¶ 159–62; ECF 23-1 (not disputing this issue); *see also Kimberlin v. DOJ*, 139 F.3d 944, 947 (D.C. Cir. 1998) ("[A]n agency's investigation of its own employees is for law enforcement purposes . . . if it focuses directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions."). The only remaining question is whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To resolve that question, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest

---

[5] Specifically, the Navy withheld the following documents under this exemption, either in whole or in part:

- Names/ranks of individuals vetted for access to information, in response to FOIA DON-NAVY-2018-005865. ECF 20-3 at 33.
- Names, ranks, community designators, genders, assignments/positions, email addresses, phone and fax numbers, and/or signatures of the accused and third persons, in response to FOIA DON-NAVY-2019-000104, FOIA DON-NAVY-2019-005803, FOIA DON-NAVY-2019-008474, and FOIA DON-NAVY-2020-001121. *Id.* at 35, 38, 41, 43.
- Personnel records, fitness reports, and photographs, in response to FOIA DON-NAVY-2019-000104, FOIA DON-NAVY-2019-005803, and FOIA DON-NAVY-2020-001121. *Id.* at 35, 38, 43.
- References to uncharged/unproven misconduct, in response to FOIA DON-NAVY-2019-005803. *Id.* at 38.
- Deliberative materials of the Board of Inquiry in response to FOIA DON-NAVY-2019-005803. *Id.* at 38.
- Summarized evidence package, containing interview transcripts and other investigative materials, in response to FOIA DON-NAVY-2019-008474, *id.* at 40, as well as investigative material and transcripts of interviews in response to FOIA DON-NAVY-2019-005803, *id.* at 38.
- Interview transcript of Adrian Jansen, debrief interview with Leonard Francis, and interview transcripts of other subjects, in response to FOIA DON-NAVY-2020-001121. *Id.* at 43.

in release of the requested information." *Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (quoting *Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

The Oakes Declaration establishes that the privacy interests here are compelling, while the public interest in disclosing this information is relatively weak. First, "[d]isclosing the identifying information of individuals vetted for access to sensitive information would necessarily subject those individuals to inquiries or harassment by the media and the general public." ECF 20-3 at 30 ¶ 175; *see Computer Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996) (holding that Exemption 7(C) protects "persons who are not the subjects of the investigation [but who] may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation."). The public, on the other hand, "has little interest in knowing the identities of the[se] professionals," because their identities "do not shed light on the government processes at issue." *Id.*; *see Brown v. EPA*, 384 F. Supp. 2d 271, 279 (D.D.C. 2005) ("[T]he D.C. Circuit has time and again rejected the suggestion that the disclosure of names in government investigative files can somehow provide insight into the workings of the government.").

Second, disclosing the identities of individuals "below the rank of O6 referred to a BOI, who the Navy retained in naval service," ECF 20-1 at 25, would "constitute a clearly unwarranted invasion of personal privacy in cases where the conduct was merely alleged and not formally adjudicated," ECF 20-3 at 26 ¶ 156.[6] "Courts have repeatedly recognized the 'substantial' privacy interest held by 'the targets of law-enforcement investigations in ensuring that their relationship to

---

[6] The portion of the Oakes Declaration that addresses Exemption 7(C) does not clearly articulate the private interest in withholding these individuals' identities. *See* ECF 20-3 at 30 ¶ 176 (describing private interest in withholding identities of individuals "with only a professional or tangential link to the case"—which would seem to refer to third party individuals, like those vetted for access to the GDMA investigation, rather than those accused of misconduct). However, because Exemptions 6 and 7(C) overlap significantly, the Court looks instead to the section of the Oakes Declaration that addresses Exemption 6—which does provide a satisfying description of the private interest at stake for individuals accused of misconduct. *See id.* at 26 ¶ 156.

the investigations remains secret.'" *PETA*, 745 F.3d at 541 (quoting *Roth*, 642 F.3d at 1174). The plaintiff "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information he seeks 'is likely to advance that interest.'" *Roth*, 642 F.3d at 1174–75 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). Whitlock has not proffered any such public interest. *See* ECF 23-1; *Smith v. Sessions*, 247 F. Supp. 3d 19, 27 (D.D.C. 2017) (concluding that plaintiff who failed to oppose government's motion for summary judgment, "ha[d] not met his burden to articulate a public interest sufficient to outweigh any individual's privacy interest"). Furthermore, while the public does have an interest "in knowing *who* the public servants are that were involved in the governmental wrongdoing, in order to hold the governors accountable to the governed," *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984), that interest is weaker when it comes to low-ranking public officials, *see Kimberlin*, 139 F.3d at 949 (holding that court may consider "the rank of the public official involved" to determine whether Exemption 7(C) withholding was appropriate). Because the Navy has withheld only the identities of "subjects below the rank of O6," ECF 20-1 at 25, and because Whitlock does not assert any public interest in these individuals' identities, *see generally* ECF 23-1, the Court finds that the privacy interests here outweigh the public interest in disclosure. The Navy is entitled to summary judgment as to its Exemption 7(C) withholdings.

### 4. *Exemption 6*

Exemption 6 of the FOIA provides that an agency need not produce "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). In this jurisdiction, Exemption 6 applies not only to "files," but to any piece of personal information, such as a name or address, the release of which would "create[ ]

a palpable threat to privacy." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987). To determine whether an agency has appropriately withheld such information, the Court "must balance the private interest involved (namely, the individual's right of privacy) against the public interest (namely, the basic purpose of the [FOIA], which is to open agency action to the light of public scrutiny)." *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

The Navy withheld one set of documents pursuant to Exemption 6 only: "some references to uncharged/unproven misconduct," in response to FOIA DON-NAVY-2019-008474. ECF 20-3 at 40. For much the same reasons articulated above, the Court finds that the private interests implicated here satisfy even Exemption 6's more rigorous standard and outweigh the public interest in disclosure. *See Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (*CREW*) (explaining that Exemption 7(C) "provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material."). As the Oakes Declaration explains, "[t]he Navy determined that the disclosure of some allegations of misconduct would constitute a clearly unwarranted invasion of personal privacy in cases where the conduct was merely alleged and not formally adjudicated." ECF 20-3 at 26 ¶ 156. Of particular concern, "disclosure of the[se individuals'] identities, contact information, and unsubstantiated allegations of misconduct may unfairly harm their public reputation and subject them to harassment and retaliation." ECF 20-3 at 40. While the Oakes Declaration and *Vaughn* index are not entirely clear on this point, the Court shares Whitlock's understanding that the Navy has withheld only records for personnel below the rank of O6 pursuant to this exemption. ECF 23-1 at 1 n.1; *see generally* ECF 26 (failing to rebut this statement). The balancing test here therefore overlaps with the Exemption 7(C) analysis described above. *See supra* Part III.A.3. Individuals accused of misconduct have some private interest in protecting their identities. *See PETA*, 745 F.3d at 541.

Whitlock does not assert any public interest in disclosing these individuals' identities, *see generally* ECF 23-1, and any public interest would nonetheless be diminished because the Navy has withheld only the identities of relatively low-ranked officials, *see Kimberlin*, 139 F.3d at 949. The Court therefore concludes that the privacy interests here outweigh the public interest in disclosure and will enter summary judgment for the Navy.

## B. Contested Issues

### 1. Segregability

The FOIA requires agencies to produce "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The Oakes Declaration demonstrates that the Navy complied with that requirement for records withheld under FOIA Exemptions 5, 6, and 7(C): "the Navy conducted a line-by-line segregability analysis with respect to each request" and "released all information not covered by an exemption." ECF 20-3 at 31 ¶¶ 177, 180. Whitlock claims that the Navy "performed no segregability analysis," ECF 23-1 at 6, but the Oakes Declaration says otherwise as to Exemptions 5, 6, and 7(C)—and "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Whitlock has given the Court no reason to believe that the Navy failed to produce segregable material with respect to its Exemption 5, 6, and 7(C) withholdings.

The Navy did not conduct a segregability analysis with respect to records withheld in full under Exemptions 7(A) and 7(B). ECF 20-3 at 31 ¶¶ 178–79. Instead, it represents that it withheld those records on a categorical basis. *See id.* The Court takes up those withholdings below.

14

### 2. *Contested Withholdings*

The parties cross-move for summary judgment on the propriety of the Navy's Exemption 7(A) and 7(B) withholdings. ECF 20-1 at 21–23; ECF 23-1 at 2–6. These exemptions protect "records or information compiled for law enforcement purposes," if their disclosure "could reasonably be expected to interfere with enforcement proceedings" (Exemption 7(A)) or "would deprive a person of a right to a fair trial or an impartial adjudication" (Exemption 7(B)). 5 U.S.C. § 552(b)(7)(A–B). As explained above, *see supra* Part III.A.3, there is no dispute that the records at issue in this case were compiled for law enforcement purposes—namely, investigating criminal offenses and preparing for "potential . . . civil or criminal sanction by the Navy." ECF 20-1 at 20– 21; *see* ECF 20-3 at 27 ¶¶ 159–62.

The Navy withheld in full five categories of documents pursuant to Exemptions 7(A) and 7(B): complete evidence packages, summarized evidence packages, interview transcripts, fitness reports, and investigative materials. ECF 20-1 at 22; *see* ECF 20-3 at 28 ¶ 164.[7] The Navy also withheld the following records in part, pursuant only to Exemption 7(A):

- Names and ranks of subjects of investigation, in response to FOIA DON-NAVY-2018-005865. ECF 20-3 at 33.
- Court documents pertinent to an individual other than the subject of the board of inquiry, in response to FOIA DON-NAVY-2019-000104. *Id.* at 35.
- Dates, locations, and certain descriptions of alleged misconduct, in response to FOIA DON-NAVY-2019-008474. *Id.* at 40.

---

[7] As a result, the Navy withheld the following records:
- 4,625 pages responsive to FOIA DON-NAVY-2019-000525. ECF 20-2 ¶ 15.
- 2,657 pages responsive to FOIA DON-NAVY-2020-000481. *Id.* ¶ 30.
- An undisclosed number of pages responsive to FOIA DON-NAVY-2020-003840. *Id.* ¶¶ 38–39.
- 21 pages responsive to FOIA DON-NAVY-2020-003844. *Id.* ¶ 44.
- An undisclosed number of pages responsive to FOIA DON-NAVY-2020-004324. *Id.* ¶ 49.
- 917 pages responsive to FOIA DON-NAVY-2020-005240. *Id.* ¶ 54.
- 969 pages responsive to FOIA DON-NAVY-2020-005242. *Id.* ¶ 59.
- 3,480 pages responsive to FOIA DON-NAVY-2020-007209. *Id.* ¶ 64.

The Navy did not withhold any documents in part pursuant to Exemption 7(B).

### a. *Exemption 7(A)*

"[T]o withhold documents pursuant to Exemption 7(A), an agency must show . . . that their disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted). The Navy identified two categories of "pending or reasonably anticipated" enforcement proceedings: the criminal proceedings in the Southern District of California, and "the anticipated Navy internal proceedings for any additional individuals that federal prosecutors refer to the Navy . . . including, possibly, the current criminal defendants." ECF 26 at 2–3; *see* ECF 20-3 at 8–10 ¶¶ 7, 12.

The Court takes judicial notice of the fact that the Southern District of California prosecutions, *USA v. Newland et al.*, were terminated on May 30, 2024, and none of the defendants have appealed. *See* 3:17-CR-623 (S.D. Cal.); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (explaining that court may take judicial notice of facts in the public record, including the record of another judicial proceeding). Disclosure cannot reasonably be expected to interfere with enforcement proceedings that have concluded. *CREW*, 746 F.3d at 1097 (holding that agency could not invoke Exemption 7(A) where criminal defendants had been sentenced and their criminal cases closed while litigation was underway, because "[t]he proceeding must remain pending at the time of [the court's] decision, not only at the time of the initial FOIA request").[8]

---

[8] It is unclear whether the Navy also relies on Leonard Francis's criminal case to justify its Exemption 7(A) withholdings. *See* ECF 20-3 at 8–9 ¶ 7 (referencing pending Francis sentencing). At the time of summary judgment briefing, Francis was awaiting sentencing in the Southern District of California. *See id.* The Court takes judicial notice that Francis has since been sentenced and his criminal cases have been terminated, and that Francis has filed an appeal. *See* ECF Nos. 443 & 448, 3:13-CR-3781-1 (S.D. Cal); ECF Nos. 433 & 439, 3:13-CR-3782 (S.D. Cal.); ECF Nos.

That leaves "the anticipated Navy internal proceedings for any additional individuals that federal prosecutors refer to the Navy." ECF 26 at 3. The Oakes Declaration provides that, "[i]f the Department of Justice refers additional individuals to Navy, the CDA will be the final disposition authority for those cases," and that "[t]he CDA will not conclude its work until such time as the Department of Justice determines that it will not refer additional individuals to Navy for final disposition and closes the GDMA criminal investigation." ECF 20-3 at 10 ¶ 12. Given the amount of time that has passed since the agency submitted its declaration and the new developments in the relevant criminal prosecutions, it is not entirely clear to the Court whether the CDA's enforcement work continues. *See CREW*, 746 F.3d at 1098–99 (noting the court's "considerable uncertainty about whether a criminal investigation in fact continues to this day" given that more than 30 months had passed since agency submitted its declaration, and remanding to the district court to "clarify whether a related investigation is in fact ongoing"). However, even assuming that further CDA enforcement proceedings are "reasonably anticipated," Defendants' arguments would still fail because they have not shown how disclosing these records "could reasonably be expected to interfere with" CDA proceedings. The Court turns first to the documents the Navy withheld in full pursuant to Exemption 7(A), and then to the records withheld in part.

*Documents withheld in full.* Generally, an agency that seeks to withhold a document under one of the FOIA's exemptions must "provide the requestor with a description of each document

---

403 & 408, 3:13-CR-4287-1 (S.D. Cal.). "For purposes of Exemption 7(A), a pending appeal of a criminal conviction qualifies as an ongoing law enforcement proceeding." *Adionser v. DOJ*, 811 F. Supp. 2d 284, 298 (D.D.C. 2011), *aff'd in part*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012); *cf. CREW*, 746 F.3d at 1097 (holding that Exemption 7(A) holdings were unjustified where both sentencing hearings and appeals had concluded). But the Navy makes no attempt to explain how disclosure of the requested documents could "reasonably be expected to interfere with" Francis's case. The Oakes Declaration says nothing about Francis in its discussion of Exemption 7(A). *See* ECF 20-3 at 28–29 ¶¶ 163–67. The declaration states that disclosure "would prejudice . . . [the] federal criminal trials as well as any accountability actions to be taken by the CDA"—but Francis did not go to trial (he pled guilty in 2015) and could not be subject to any CDA accountability action (he was not a Navy employee). *Id.* at 28 ¶ 167. Thus, even if the Navy did intend to rely on the Francis sentencing and subsequent appeal to justify its Exemption 7(A) withholdings, that argument could not succeed.

being withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). However, an agency may "categorically" withhold documents pursuant to Exemption 7(A) if it (1) "define[s] its categories functionally," (2) "conduct[s] a document-by-document review" to assign documents to the proper category, and (3) "explain[s] to the court how the release of each category would interfere with enforcement proceedings." *CREW*, 746 F.3d at 1098. When it comes to the third prong, the Court "gives deference to an agency's predictive judgment of the harm that will result from disclosure of information." *Id.* However, "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; 'it must rather demonstrate how disclosure' will do so." *Id.* (quoting *Sussman*, 494 F.3d at 1114).

The Navy has failed to satisfy the third requirement for categorical withholdings because it has not "explain[ed] to the court how the release of *each category* would interfere" with future CDA enforcement action. *Id.* (emphasis added) (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986)). Again, the Navy withheld five categories of documents in full— complete evidence packages, summarized evidence packages, interview transcripts, fitness reports, and investigative materials. ECF 20-1 at 22; *see* ECF 20-3 at 28 ¶ 164. The Oakes Declaration states generally that "[d]ocuments in these categories were comprised of information concerning specific targets, witnesses, and details of alleged misconduct that, if public, would be damaging . . . [to] future CDA actions"; that "disclosure would hinder the CDA's ability to control any further investigation into future referred subjects, enable potential targets to elude detection or suppress or fabricate evidence, or prematurely reveal the strategy of the CDA's case to those who might not yet know their actions are under scrutiny"; and that "release would reveal key insights of the investigators and prosecutors to those under prosecution, which would assuredly hinder the

government's ability to hold those individual responsible." ECF 20-3 at 28–29 ¶¶ 164, 167. But these general statements do not comply with the D.C. Circuit's requirement to "explain to the court how the release of *each category* would interfere" with future CDA enforcement action. *CREW*, 746 F.3d at 1098 (emphasis added). Compare the Oakes Declaration to, for example, the government's declaration in *Manning v. DOJ*, 234 F. Supp. 3d 26 (D.D.C. 2017), where the court upheld the government's Exemption 7(A) withholdings. *Id.* at 37. In *Manning*, the FBI categorically withheld certain documents because—like the Navy—it feared their release would jeopardize enforcement proceedings. *Id.* at 36. But the *Manning* declaration walked through each category of withheld documents and explained, in some detail, how disclosing that particular category could interfere with enforcement proceedings. *See* ECF 12-1 at 20–25, *Manning v. DOJ*, No. 15-CV-1654 (D.D.C. 2017). Disclosing "confidential source statements," for example, could subject sources to retaliation or intimidation and therefore chill the FBI's investigation. *Id.* Disclosing "exchange of information between FBI and other law enforcement," on the other hand, could "reveal the scope and focus of the investigation" and tip off persons of interest. *Id.* These are distinct explanations, tailored to each category of withheld documents. The Oakes Declaration, by contrast, does not explain how disclosing each category of documents (evidence packages, or interview transcripts, or fitness reports) would interfere with future CDA enforcement proceedings. It simply lumps all five categories under the same blanket statement—which would seem to defeat the purpose of enumerating those five categories at all. The agency has therefore failed to appropriately justify its Exemption 7(A) categorical withholdings. *See CREW*, 746 F.3d at 1098.

    *Documents withheld in part.* As noted above, the Navy withheld the following records in part pursuant to Exemption 7(A) only:

- Names and ranks of subjects of investigation, in response to FOIA DON-NAVY-2018-005865. ECF 20-3 at 33.
- Court documents pertinent to an individual other than the subject of the board, in response to FOIA DON-NAVY-2019-000104. *Id.* at 35.
- Dates, locations, and certain descriptions of alleged misconduct, in response to FOIA DON-NAVY-2019-008474. *Id.* at 40.[9]

The Navy fails to defend these partial withholdings in its briefing. *See* ECF 20-1 at 22–23 (discussing only Exemption 7(A) categorical withholdings); ECF 26 at 2–3 (same). The Oakes Declaration adds little: it states that the Navy "applied Exemption 7A to partial withholdings of dates, locations, and specific descriptions of alleged misconduct," but does not explain how disclosure of that material in particular would interfere with future CDA enforcement proceedings. *See* ECF 20-3 at 28 ¶ 165. And the declaration says nothing at all about why the Navy withheld names and ranks of subjects of investigation (in response to FOIA DON-NAVY-2018-005865) and court documents pertinent to individuals other than the subject of the board of inquiry (in response to FOIA DON-NAVY-2019-000104) under Exemption 7(A). *See id.* at ECF 20-3 at 28–29 ¶¶ 163–67. Whitlock is therefore entitled to summary judgment as to records withheld in part pursuant to only Exemption 7(A).

### b. *Exemption 7(B)*

"Exemption 7(B) requires a showing '(1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings.'" *Chiquita Brands Int'l, Inc. v. SEC*, 805 F.3d 289, 294 (D.C. Cir. 2015) (quoting *Wash. Post Co. v. DOJ*, 863 F.2d 96, 102 (D.C. Cir. 1988)). For the reasons discussed above, the only pending adjudications on which the Navy

---

[9] The Court need not address records withheld in part pursuant to Exemption 7(A) as well as Exemptions 5, 6 and/or 7(C), given the Court's finding that the Navy's Exemption 5, 6, and 7(C) withholdings were proper. *See Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other.")

could rely are future CDA enforcement actions. *See supra* Part III.B.2.a. But even assuming that those proceedings meet the first prong of Exemption 7(B)'s test, the Navy has not met the second prong.

Exemption 7(B) sets an even higher bar for disclosure than 7(A). Exemption 7(A) "permit[s] records to be withheld if release 'could reasonably be expected to' cause a particular evil," while "(7)(B) requires that release 'would' deprive a person of fair adjudication." *Wash. Post Co.*, 863 F.2d at 102 (quoting 5 U.S.C. § 552(b)(7)(A)–(F)). The Oakes Declaration states only that "[t]he release of the information [withheld pursuant to Exemption 7(B)] will compromise the objectivity . . . of U.S. service members named to a Board of Inquiry or court martial." ECF 20-3 at 29–30 ¶ 171. But the mere fact that a pool of potential jurors (or here, Board of Inquiry members) might be exposed to publicity about a case—"even per[v]asive, adverse publicity"— does not satisfy Exemption 7(B)'s high standard. *Chiquita Brands Int'l, Inc. v. SEC*, 10 F. Supp. 3d 1, 5 (D.D.C. 2013), *aff'd*, 805 F.3d 289 (D.C. Cir. 2015) (quoting *Skilling v. United States*, 561 U.S. 358, 384 (2010)). And regardless, the Oakes Declaration makes no attempt to "explain to the court how the release of *each category*" of withheld documents would interfere with CDA enforcement proceedings. *CREW*, 746 F.3d at 1098 (emphasis added); *see* ECF 20-3 at 29–30 ¶ 171. The Navy's Exemption 7(B) categorical withholdings therefore suffer from the same flaw as its Exemption 7(A) categorical withholdings. *See supra* Part III.B.2.a.

Because the Navy has failed to demonstrate that disclosing these documents would, more probably than not, seriously interfere with the fairness of CDA enforcement proceedings, Whitlock

is entitled to summary judgment as to the Navy's Exemption 7(B) withholdings.[10] *See Chiquita Brands Int'l, Inc.*, 805 F.3d at 294.

*    *    *

For the foregoing reasons, Defendants' motion for summary judgment, ECF 20, is **GRANTED** as to the Navy's Exemption 5, 6, and 7(C) withholdings, as well as the adequacy of its searches, and is otherwise **DENIED**. Plaintiff's cross-motion for summary judgment, ECF 23, is **GRANTED**. Defendants are therefore **ORDERED** to produce the following records withheld pursuant to Exemptions 7(A) and 7(B):

- Names and ranks of subjects of investigation, in response to FOIA DON-NAVY-2018-005865. ECF 20-3 at 33.
- Court documents pertinent to an individual other than the subject of the board, in response to FOIA DON-NAVY-2019-000104. *Id.* at 35.
- Dates, locations, and certain descriptions of alleged misconduct, in response to FOIA DON-NAVY-2019-008474. *Id.* at 40.
- 4,625 pages withheld in full, in response to FOIA DON-NAVY-2019-000525. ECF 20-2 ¶ 15.
- 2,657 pages withheld in full, in response to FOIA DON-NAVY-2020-000481. *Id.* ¶ 30.
- An undisclosed number of pages withheld in full, in response to FOIA DON-NAVY-2020-003840. *Id.* ¶¶ 38–39.
- 21 pages withheld in full, in response to FOIA DON-NAVY-2020-003844. *Id.* ¶ 44.
- An undisclosed number of pages withheld in full, in response to FOIA DON-NAVY-2020-004324. *Id.* ¶ 49.
- 917 pages withheld in full, in response to FOIA DON-NAVY-2020-005240. *Id.* ¶ 54.
- 969 pages withheld in full, in response to FOIA DON-NAVY-2020-005242. *Id.* ¶ 59.
- 3,480 pages withheld in full, in response to FOIA DON-NAVY-2020-007209. *Id.* ¶ 64.

A separate order accompanies this memorandum opinion.

---

[10] Because the Court concludes that the agency failed to substantiate its Exemption 7(A) and 7(B) withholdings, the Court need not reach Whitlock's additional argument that the FOIA's foreseeable harm amendments apply to Exemptions 7(A) and 7(B), and that the Navy failed to meet the standard established in those amendments. *See* ECF 23-1 at 5–6.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 6, 2025